# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## No. 23-3002

## UNITED STATES, *Appellee*

## V.

## KENNETH GILMORE, *Appellant*

From the United States District Court
For the Eastern District of Arkansas
The Honorable D.P. Marshall

## APPELLANT'S OPENING BRIEF

Mark Alan Jesse
425 West Broadway, Ste E
North Little Rock, AR 72114
Phone (501) 375-4422
Email: Jesselawfirm@aol.com

*ATTORNEY FOR APPELLANT*

# SUMMARY OF THE CASE
## AND REQUEST
### FOR ORAL ARGUMENT

Gilmore was indicted by the grand jury for the Eastern District of Arkansas on September 5, 2019. (R. Doc. 3) The indictment set forth a single count alleging Gilmore's violation of 18 USC § 922 (g) (1), felon in possession of a firearm. (R. Doc. 3) Gilmore proceeded to jury trial which commenced on March 1, 2022 and concluded on March 3, 2022 with a jury verdict of guilt. (R. Doc. 84-86)   Following the preparation of a Pre-Sentence report, a sentencing hearing was held on August 28, 2023 before Chief Judge D. P. Marshall. (D. Doc. 14)   The court imposed a sentence of 15 years in the Bureau of Prisons to be followed by 3 years of supervised release; and a $100.00 special assessment.  The final judgment was filed of record on August 30, 2023.  (R. Doc. 115).  Notice of appeal was timely filed on September 4, 2023 (R. Doc. 117) At issue on appeal is whether the court should have granted his motions to suppress filed during the pre-trial phase.

Appellant request 15 minutes for oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ..    i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ....................................................... iii-vi

JURISDICTIONAL STATEMENT ................................................ 1

STATEMENT OF THE ISSUES .................................................. 2

STATEMENT OF THE CASE ................................................... 2-3

PROCEDURAL HISTORY ......................................................... 3

STATEMENT OF THE FACTS ................................................... 4

SUMMARY OF ARGUMENT ..................................................... 23

ARGUMENTS ........................................................................ 23

### I.
**THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AS THE ISOLATED SMELL OF MARIJUANA IS NOT SUFFICIENT PROBABLE CAUSE FOR THE ISSUANCE OF A WARRANT** ........................................................................ 23

### II.
**THE COURT ERRED IN DENYING GILMOR'S MOTION TO SUPRESS ABSENT PROOF OF OATH OR AFFIRMATION AS REQUIRED BY STATE LAW, RULES OF PROCEDURE AND SUPREME COURT ADMINISTRATIVE ORDER.** ........................................... 33

STANDARD OF REVIEW ....................................................... 24

APPLICABLE LAW .............................................................. 25

ARGUMENTS ON THE MERITS ............................................. 33-44

CONCLUSION ..................................................................... 45

CERTIFICATE OF COMPLIANCE ............................................. 46

CERTIFICATE OF SERVICE ................................................... 47

ADDENDUM (JUDGMENT) FILED ELECTRONICALLY, WILL BE ATTACHED TO PAPER BRIEFS

Appellate Case: 23-3002    Page: 3    Date Filed: 10/10/2023 Entry ID: 5324435

# TABLE OF AUTHORITIES

## CASES:

*Bennett v. State*, 345 Ark. 48, 53, 44 S.W.3d 310 (2001) ...........................30

*Brigham City v. Stuart*, 547 U.S. 398 (2006) ...............................................28

*Illinois v. Gates*, 462 U.S. 213, 230 (1983)..................................................25

*Johnson v. United States*, 333 U.S. 10 (1948)...............................................29

*Kleinholz v. United States*, 339 F.3d 674 (8th Cir. 2003) ...........................28

*Mapp v. Ohio*, 367 U.S. 643 (1961) ............................................................27

*People v. McKnight*, 446 P.3d 397 (Colo. 2019)..........................................32

*United States v. Ameling*, 328 F.3d 443 (8th Cir. 2003) ..............................28

*United States v. Caves*, 890 F.2d 87 (8th Cir.1989)....................................29

*United States v. Clay*, 646F.3d 1124 (8th Cir. 2011) ..................................24

*United States v. Douglas*, 744 F.3d 1065 (8th Cir. 2014) ...........................25

*United States v. Etheridge*, 165 F.3d 655 (8th Cir. 1999)...........................26

*United States v. Fiorito*, 640 F.3d 338 (8th Cir. 2011) ...............................27

*United States v. Gater*, 868 F.3d 657 (8th Cir. 2017) .................................25

*United States v. Grant*, 490 F.3d 627 (8th Cir. 2007) .................................26

*United States v. Green*, 954 F.3d 1119 (8th Cir. 2020)................................26

*United States v. Hogan*, 539 F.3d 916 (8th Cir. 2008)................................ 27

Appellate Case: 23-3002    Page: 4    Date Filed: 10/10/2023 Entry ID: 5324435

*United States v. Johnson*, 848 F.3d 872 (8th Cir. 2017) .............................25

*United States v. LaGrange*, 981 F.3d 1119 (8th Cir. 2020) ........................25

*United States v. Leon*, 468 U.S. 897 (1984) ..................................................27

*United States v. McCoy*, 200 F.3d 582 (8th Cir. 2000) ...............................29

*United States v. McIntyre*, 646 F.3d 1107 (8th Cir. 2011) ..........................29

*United States v. Morris*, 915 F.3d 552 (8th Cir. 2019)................................24

*United States v. Peltier*, 217 F.3d 608 (8th Cir. 2000).................................29

*United States v. Riedesel*, 987 F.2d 1383 (8th Cir. 1993) ...........................26

*United States v. Seidel*, 677 F.3d 334 (8th Cir. 2012)..................................25

*United States v. Shockley*, 816 F.3d 1058 (8th Cir. 2016) ........................... 28

*United States v. Smith*, 820 F.3d 356 (8th Cir. 2016)..................................24

*United States v. Smith*, 789 F.3d 923 (8th Cir. 2015)..................................29

*United States v. Smith*, 990 F.3d 607 (8th Cir. 2021)..................................30

*United States v. Toney*, 4:20-cr-00271-02 KGB (E.D. Ark. Jul. 8, 2022) ...29

*United States v. Washington*, 455 F.3d 824 (8th Cir. 2006) ....................... 24

*United States v. White*, 928 F.3d 734 (8th Cir. 2019) .................................. 29

*United States v. Williams*, 955 F.3d 734 (8th Cir. 2020) ............................ 24

*United States v. Williams*, 777 F.3d 1013 (8th Cir. 2015) ......................... 24

*United States v. Winters*, 221 F.3d 1039 (8th Cir. 2000) ........................... 29

*United States v. Woods*, 747 F.3d 552 (8th Cir. 2014)................................ 24

iv

*Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672 (8th Cir. 2019) .................................................................................................28

**STATUTES AND RULES**

18 U.S.C. § 3231 .............................................................................i, 1

21 USC §922 (g) (1) .......................................................................  1

28 U.S.C. § 1291 ...........................................................................  1

Federal Rule of Appellate Procedure 4(b)(1)(A) ............................  1

Federal Rule of Appellate Procedure 32 ....................................46

Ark. R. Crim. P. Rule 13.1 ........................................................ 22

Ark. R. Crim. P. Rule 13.4 ........................................................ 22

Arkansas Code § 16-82-201 ...................................................... 22

Arkansas Supreme Court Administrative Order 2 ...................... 30

Arkansas Supreme Court Administrative Order 18 .................... 30

Arkansas Supreme Court Administrative Order 19 .................... 30

United States Constitution, Amend. IV ...................................... 23

Appellate Case: 23-3002    Page: 6    Date Filed: 10/10/2023 Entry ID: 5324435

# JURISDICTIONAL STATEMENT

Appellant, Gilmore, was charged in a single count indictment filed September 5, 2019 in the Eastern District of Arkansas which alleged a violation of 18 USC § 922 (g)(1) for being a felon in possession of a firearm, a federal felony offense. (R. Doc. 3)

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, as the charges alleged in the indictment are offenses against the United States. (R. Doc. 3)

Following a three day jury trial and verdict of guilt, the Court sentenced the Defendant to 180 months of imprisonment on August 28, 2023. (R. Doc. 114)  The judgment was filed of record on August 30, 2023. (R. Doc. 115)

Timely notice of appeal was filed on September 4, 2023.  (R. Doc. 117)

The Defendant's notice of appeal was filed timely pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A) within 14 days of the judgment being filed. This appeal is from that final order or judgment. (R. Doc. 115) The Appellate Court's jurisdiction is based on 28 U.S.C. § 1291, which provides jurisdiction in this court over appeals from the final judgment of a U.S. District Court.

1

## STATEMENT OF THE ISSUES

**1.  THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AS THE ISOLATED SMELL OF MARIJUANA IS NOT SUFFICIENT PROBABLE CAUSE FOR THE ISSUANCE OF A WARRANT**.

*People v. McKnight*, 446 P.3d 397 (Colo. 2019)

**2.  THE COURT ERRED IN DENYING GILMOR'S MOTION TO SUPRESS ABSENT  PROOF OF OATH OR AFFIRMATION AS REQUIRED BY STATE LAW, RULES OF PROCEDURE AND SUPREME COURT ADMINISTRATIVE ORDER**.

Ark. Rule. Crim. Proc. 13.1
Ark. Rule Crim.  Proc. 13.4
Ark. Code. Ann. § 16-82-201 (2020)

## STATEMENT OF THE CASE

Kenneth Gilmore was charged in a single count indictment with violating 18 U.S.C. § 922 (g) (1) as it was alleged he was found to be in possession of a firearm after sustaining at least on prior felony conviction. (R. Doc. 3).  He was found guilty of the offense following a three day jury trial which commenced on March 1, 2022 and concluded on March 3, 2022 with a unanimous verdict of guilt. (R. Doc. 84-86)

2

At a sentencing hearing held on August 28, 2023, the trial court sentenced the Appellant to 15 years (180 months) in prison to be followed by 3 years of supervised release and imposed the $100.00 special assessment. (R. Doc. 114)

**Procedural History**

The final judgment was filed on record on August 30, 20023. (R. Doc. 115) Gilmore filed a timely notice of appeal on September 4, 2023. (R. Doc. 117) The matter was docketed in the Court of Appeals and the brief is due October 11, 2023 and assigned case No.: 23-3002.

The charges in the indictment and the evidence introduced at trial resulted from the search of a residence connected to Gilmore in Jonesboro, Arkansas where a pistol, ammunition, drugs and assorted paraphernalia had been seized by the Jonesboro, Arkansas Police Department's Street Crime Unit on September 20, 2018.

During the pre-trial phase of the case, Gilmore filed 3 separate motions to suppress and motions for reconsideration. (R. Doc. 26, 27, 35, 36, 39, 40, 53 w/ Defense Exh. 1 and 2) The motions were denied without hearing. (R. Doc. 31, 41, 59) A motion for reconsideration was filed by Gilmore (R. Doc. 64. Defense Exh. 1) The motion for reconsideration was set for a suppression hearing, which

3

also was denied, after the court heard testimony and received exhibits and arguments. (R. Doc. 65, 79, 80).

It is from the denial of his motions that Gilmore now appeals.

## Statement of the Facts

On September 20, 2018, officers with the Jonesboro Police Department Street Crimes Unit arrived at a residence located at 600 Freeman Street in Jonesboro, Arkansas, shortly before noon, to attempt to contact Kenneth Wayne Gilmore. Officers had received hearsay information of the possible use and sale of illegal narcotics at the residence from an unknown source. The officers did not have a warrant and were proceeding with a "knock and talk" as the basis for their contact with the residence. The officers had previously observed Gilmore in the front yard of the premise on multiple occasions, had observed his vehicle parked in the driveway and believed he resided there alone. Upon officers' arrival at the residence, Mr. Gilmore came to the door and spoke with the officers.

The officers claim they detected the odor of marijuana coming from inside the residence while speaking with Mr. Gilmore. As a result, Mr. Gilmore was directed to exit the residence and was detained. Officers entered the residence to clear it of any other occupants asserting it was a necessary "protective sweep".

4

While clearing the residence, the officers located and spoke with a female present at the scene, Monica Ivy, who also exited the residence and was detained.

Mr. Gilmore and Ms. Ivy were subsequently arrested on outstanding warrants which were pending in unrelated state matters.

Officers claimed after clearing the residence of all occupants, they obtained a search warrant to search the premises and conducted a search pursuant to the warrant according to the initial incident report. The mechanics of which officer obtained the warrant or the mode of obtaining the warrant was not specified in the initial report. The specific time the warrant was issued reflects "120 O'clock p.m." on the face of the warrant. R. Doc. 30-1 and 30-2, Government's Exh. A and B.) Officers entered the premises to commence a search at 12:02 p.m. as determined by body camera footage obtained by Gilmore via a freedom of information request.

Officers searched the residence and located the following in Mr. Gilmore's room: a .380 caliber pistol, a .22 caliber rifle, and a .50 caliber black powder rifle. The pistol was located inside the pocket of a robe hanging on the bedroom door and was loaded with four .380 caliber rounds with one round chambered. Officers also located two metal ammunition cans that were full of miscellaneous ammunition. Officers further located two glass methamphetamine pipes with residue in the

5

bedroom. Additional loose boxes of ammunition were found in the bedroom, and some of the ammunition from the boxes was compatible with the firearms located in the residence. Further, an ammunition box was located in the kitchen, and an ammunition box was located in the attic where the Tupperware container of drugs was found.

In an attic access in the hallway officers located a plastic container which contained two glass methamphetamine pipes, suspected methamphetamine, suspected marijuana, one oxycodone pill, and five tramadol pills. The suspected methamphetamine was lab confirmed as .3270 grams of methamphetamine.

Without the search of the premises and seizure of the weapons and contraband found in the residence on September 20, 2018, there was no other evidence in support of the indictment, as charged, thus the constitutionality of the search is a pivotal question.

After Gilmore filed his first motion to suppress, the United States responded asserting the search was pursuant to an affidavit and search warrant attached to their reply obtained by officers on the day of the search. (R. Doc 26, 30 w/ Government's Exh. 1(A) and 2 (B)) Neither the affidavit or search warrant were file marked or certified as true and correct by the court clerk. (R. Doc. 30-1 and 30-

6

2) (Government's Exh. 1(A.) and 2 (B)   The court denied Gilmore's motion

without a hearing (R. Doc. 31)

Later in the case, Gilmore's defense counsel obtained body camera footage

from the day of the search in response to a freedom of information request served

upon the City of Jonesboro.  The footage had not been provided to the Defendant in

discovery.

Upon reviewing the footage, it became clear the officers did not have time to

leave the scene, present a judge with an affidavit for a search warrant and return to

the scene to commence searching between their first contact with Gilmore and

when entry was made to the premises under the authority of any warrant.  As some

of the officers involved had body camera footage from the day of the contact and

search, the chronology of events could be determined in reference to time of day,

the time stamps on the videos, and the sound of the "noon" sirens heard on the

audio.  The videos established the time that the officers arrived, that none of them

left to obtain a warrant and the time the search commenced.  As the validity of the

search was being questioned, proof of a properly issued and executed warrant and

return was a critical relevant inquiry by the defense.  It is undisputed the video

showed officers made entry into the home at 12:02 p.m.

Appellate Case: 23-3002   Page: 13   Date Filed: 10/10/2023 Entry ID: 5324435

The original incident report summarily indicates a warrant was obtained after Gilmore was detained, but does not mention how it was obtained; leaving the reader of the report to assume it was by the standard practice of submitting the affidavit to a judge in person. (Supp. TR., Vol. 1, p. 108) In an initial responsive pleading the United States plead that the warrant affidavit and warrant were obtained by Officer Christopher Jefferson who was at the scene. (R. Doc. 30 at p. 2)

Once the video footage was received and reviewed it was clear none of the officers had left the scene, did not have the time to leave and obtain a warrant and return, and it was obvious that Christopher Jefferson stood outside the residence and was no part of obtaining a warrant, leading to further inquiry by the Defense about the matter. Only then did the United States assert a different officer had obtained the warrant via electronic request via cell phone and email over the email server run by the City of Jonesboro using a city owned computer in the lead officers' vehicle at the residence and by phone call from the officers city owned cell phone from the vehicle. (R. Doc. 57 at p. 2, with Government's Exh. 1, 2 and 3) The purported warrant request was to Judge David Boling, a Municipal Court Judge for the City of Jonesboro, who did not have felony jurisdiction. (see style of the warrant, Government's Exh. 3 at p. 1) The warrant attached as Government's

Exhibit 3 to the response shows the exact time the warrant was issued "at 120" O'clock p.m.". (R. Doc 57-3)

This new revelation prompted Gilmore's counsel to request further proof from the United States related to cell phone records, email records and print records related to the search from the United States and was advised that Gilmore had been provided with all available materials. (R . Doc 64, Defense Exh. 1 at p. 1-2)

Gilmore's trial counsel moved to continue the trial date and for additional time to issue subpoenas to attempt to obtain any additional information related to the issuance of the search warrant by email and cell phone which could shed light on whether the assertions made by the officers were true. The United States was ordered to provide additional information to the Defense stating "The United States must either provide all existing responsive electronic records (including email) from the Jonesboro Police Department or identify the third-party custodian of those records by name and address by noon on 2/23/2022." as a suppression hearing had been set for February 28, 2022. (R. Doc. 65)

## SUMMARY OF SUPPRESSION HEARING TESTIMONY

A suppression hearing was held on September 28, 2022. Suppression hearing references hereafter are denoted as "Supp. TR. Vol. 1" with page and

9

exhibit citations to denote suppression hearing testimony versus "TR. Vol 1" for any references to the standard trial transcript references.

The court heard testimony on Gilmore's third motion to suppress and his motion for reconsideration. Multiple officers present at the scene the day of the search were called to testify, Officer Smith, Officer Jefferson and Officer Bailey, along with 3 civilian witnesses who worked for the City of Jonesboro or the County. The focus of the hearing surrounded the application, issuance and execution of the warrant, including the electronic records related to the application and issuance of the warrant, and who exactly participated in obtaining the warrant.

Gilmore's attorney summarized the issue at the hearing in response to a relevancy objection by stating "The issue before this Court is regarding my third motion to suppress as to whether or not there was the timing of the alleged warrant, search warrant, signed by Judge Boling back to Investigator Bailey, and whether or not truly a search warrant was even there, was even -- whether or not there was even a valid search warrant to begin with." (Supp. TR., Vol. 1, p. 16) He explained that multiple motions to suppress had been filed as the facts were developed and changed in response to his inquiries. (Supp. TR., Vol. 1, p. 108)

The United States first called Officer Dustin Smith. (Supp. TR., Vol. 1, p. 12)

10

Officer Smith was a sergeant with the Jonesboro Police Department on September 20, 2018 working with the street crimes unit on the day of the search. Smith made contact with Gilmore at the 600 Freeman Street address (Supp. TR., Vol. 1, p. 12-13) Smith was wearing a body camera, the footage from which was introduced as Exhibit 1 to the hearing. (Supp. TR., Vol. 1, p. 13-14)(Supp. Hrg. Government's Ex. 1).

The time code display on the video starts minutes prior to 17:00. It was explained that 17:00 on the video correlated to noon local time. References were made to the video during the hearing both in relationship to 17:00 hours (the time display on the video), how much time had elapsed from the beginning of the recording (in elapsed time in minutes) and by the correlated corrected local time that was around noon when officer arrived. It is a bit confusing at times, but everyone agrees that the time stamps on the video can be correlated to 17:00 hours being 12 noon local time on the video. At one point the U.S. Attorney states "3 minutes in (sic) was 16:59:59 which adjusted for time was almost noon" and that "21:29 minutes into the recording is 16:59". (Supp. TR., Vol. 1, p. 18). From this we can extrapolate that the video commenced at approximately 11:38 a.m.

Appellate Case: 23-3002    Page: 17    Date Filed: 10/10/2023 Entry ID: 5324435

corrected to local time or 16:38 from the time stamp display on the video, and elapsed time from these starting times.

The City Emergency warning system can be heard going off at noon at one point during the video, and can be used to extrapolate the offset between the time display on the video (approximately 17:00) and the actual local time (12:00 noon). (Supp. TR., Vol. 1, p. 18)  At 24:27 elapsed time on the video, officer make entry into the home, or approximately 12:02:27 local time corrected.  (Supp. TR., Vol. 1, p. 19)  The 12:02 entry time is not in dispute.  This is significant as the warrant shows it was issued at "120 O'clock p.m." (R. Doc. 57 at p. 2, with Government's Exh. 1, 2 and 3)   By state procedural rule, the issuing magistrate is to affix the exact time a warrant is issued to the face of the warrant when it is issued.

Although Smith was present at the scene, he did not know how the warrant was obtained in this specific instance. (Supp. TR., Vol. 1, p. 19)  He testified that the standard procedure was to use electronic means. (Supp. TR., Vol. 1, p. 20)  He didn't know if Officer Jefferson had obtained the warrant, but he could confirm that Jefferson handed what he believed to be the warrant to Gilmore.  (Supp. TR., Vol. 1, p. 19)

Appellate Case: 23-3002    Page: 18    Date Filed: 10/10/2023 Entry ID: 5324435

Smith's body camera footage, Governments Suppression Exhibit 1, shows Officer Bailey get out of his car at approximately 12:00 noon (Supp. TR., Vol. 1, p. 21) Smith reviewed the video while on the witness stand and testified he saw nothing in Officer Bailey's hands when he got out of his vehicle. He further testified that some but not all cars have printers (Supp. TR., Vol. 1, p. 21-22)

Smith testified that emails are deleted once his email inbox is full but he keeps a copy of pdf attachments (warrants and affidavits) before deleting emails. (Supp. TR., Vol. 1, p. 23)

Next, Officer Bryan Bailey testified (Supp. TR., Vol. 1, p. 24) Bailey was working with the Jonesboro Street Crimes unit and arrived at 600 Freeman Street on September 18, 2018 along with other members of the unit. (Supp. TR., Vol. 1, p. 25).

Bailey testified he typed up the search warrant and affidavit as he was the faster typist of the unit. (Supp. TR., Vol. 1, p. 25-26) His Dodge Charger is equipped with a laptop. (Supp. TR., Vol. 1, p. 26) Once typed, he testified he sent it to Municipal Judge David Boling. Bailey indicated the normal protocol for obtaining a warrant was to call the judge on a cell phone and get sworn in after which the Judge would normally email the warrant back to the requesting officer.

13

(Supp. TR., Vol. 1, p. 26-27) Bailey claimed he printed out the warrant on his cars printer before it was handed off to another officer.(Supp. TR., Vol. 1, p. 27) It was his further testimony that he used his work email address to send and receive the warrant documents. (Supp. TR., Vol. 1, p. 27) After printing off the search warrant Bailey claimed he gave it to Officer Jefferson to give to Gilmore. (Supp. TR., Vol. 1, p. 27) Thereafter he participated in the search and found a loaded Lorcin pistol in a robe hanging on the door, on the back of the door, in the bedroom, as well as a .22 rifle that was hanging on the wall. (Supp. TR., Vol. 1, p. 28) The weapon seized by Bailey is the weapon set forth in the indictment, the possession of which formed the factual support for the sole count of the indictment. (R. Doc. 3)

On cross examination the video was paused at 21:41 (elapsed time) or almost noon corrected for local time. (Supp. TR., Vol. 1, p. Government's Exh. 1) Bailey is seen exiting his vehicle and closing the car door with nothing in his right hand. Bailey testified he had the warrant in his hand when he got out of his car and thereafter handed it to Officer Jefferson. (Supp. TR. Vol. 1 p. 38-39)

Bailey testified he called Judge Boling on his cell phone from his car and was sworn in. (Supp. TR., Vol. 1, p. 31-32) He testified he received the signed warrant back by email at approximately noon. The time on the warrant says 1:20

14

but he says he left out a 0 and it should say 12:00. The warrant says it was issued at 1:20:05 (Supp. TR., Vol, 1, p. 33, referring to Government's Exh. 2) "This is what I typed in. It says, I, David Boling, on this 20th day of September, 2018, and it says at 1:20:05 p.m." (Supp. TR. Vol. 1 p. 33)

Exhibit 2 was introduced which was the affidavit and warrant (Supp. TR., Vol. 1, at p. 34 Government's Exh. at p. 1 and 2)

Bailey searched his email account but was unable to find any emails sent or received related to the issuance of the warrant. (Supp. TR., Vol. 1, p. 34-35)  He testified it was normal to delete the oldest emails from his email box once it was full and not keep copies. (Supp. TR., Vol. 1, p. 35) Bailey testified he sent an email to the judge about 11:56 and the warrant was returned signed about 4 minutes later (Supp. TR., Vol. 1, p. 36)  He testified you can't see the warrant in his hand on video when he exited his vehicle because he claims it was rolled up (Supp. TR., Vol. 1, p. 40-41)  Bailey didn't know if the judge printed it off and signed it as a hard copy prior to returning it or signed it on his tablet and returned  it electronically. (Supp. TR., Vol. 1, p. 47)  Government's Exhibit 3, the affidavit for the search warrant was introduced. (T. Supp. Hr. at p. 47 Ex. 3)  Both the affidavit

and warrant were sent back together to Bailey from the Judge, but only the warrant was printed off according to Bailey (Supp. TR., Vol. 1, p. 52)

Officer Christopher Jefferson testified next that he was an officer with the Jonesboro police department who went to 600 Freeman on Sept 20 2018, as part of the street crimes unit. (Supp. TR., Vol. 1, p. 53) It was his understanding that Bailey obtained the warrant and wrote the affidavit even though in previous pleadings the United States indicated Jefferson applied for the warrant. (Supp. TR., Vol. 1, p. 55) (R. Doc. 30 at p. 2) He indicated Bailey handed him the purported search warrant and he provided it to Gilmore (Supp. TR., Vol. 1, p. 55) He admitted he saw nothing in Bailey hands when Bailey got out of car after viewing the video. (Supp. TR., Vol. 1, p. 57) He didn't see him print it from the car (T. Supp. Hrg 58)

Next, Jason Ratliff testified he was the IT Director for Jonesboro, Arkansas. Ratliff searched the city's system server for and could not find any emails from Bailey to Boling or From Boling back to Bailey on September 28, 2018. (Supp. TR., Vol. 1, p. 63-65) He explained that emails are purged from the server 1 month after being deleted by a user. (Supp. TR., Vol. 1, p. 65-67) The laptop in Bailey's vehicle was a Toshiba "tough book" which used cellular data to communicate and

16

Bailey had a city owned cellular phone with each device having separate phone numbers. The laptop and cell phone in use by Bailey on September 18, 2018 were no longer in service having been upgraded at some point after the search but prior to the suppression hearing. (Supp. TR., Vol. 1, p. 69) No cell records were ever produced verifying any electronic submission or receipt of any of the documents.

Lisa Lawrence testified next. (Supp. TR., Vol. 1, p. 75) Ms. Lawrence was a county administrator for Craighead County. (Supp. TR., Vol. 1, p. 76) She contacted Judge Boling's office and Hearing Exhibit 4 was located. Exhibit 4 is an email to Judge Boling from Bailey on September 28, 2018 (Supp. TR., Vol. 1, p. 77, Government's Exh. 4) After Boling's office was contacted by Lawrence, it was agreed Ezra Rodgers, the county IT director, would look further for additional information on the Judge's computer system (Supp. TR., Vol. 1, p. 78)

Ezra Rodgers, the Craighead County IT director testified next. (Supp. TR., Vol. 1, p. 80) Rodgers testified he was able to locate an incoming email from Bailey to Judge Boling on the system, but no response from the judge for the date in question. (Supp. TR., Vol. 1, p. 81- 82, 84)

He confirmed that once emails are deleted by a recipient, they are not recoverable after 30 days. (Supp. TR., Vol. 1, p. 84-85) He further indicated a

Appellate Case: 23-3002    Page: 23    Date Filed: 10/10/2023 Entry ID: 5324435

document could have been sent from a scanner possibly, without being saved to the system or any record being kept by the system. (Supp. TR., Vol. 1, p. 85) Nevertheless, the Arkansas Rules of Criminal Procedure, Administrative Orders of the Arkansas Supreme Court and the Arkansas Code require all documents related to the issuance of a search warrant to be filed with the court clerk.

Bailey was recalled as a witness by the Defense and stated the "oath or affirmation" related to the warrant application was done over the phone in this case. He claimed he called the judge and was sworn in by the judge. (Supp. TR., Vol. 1, p. 97) Such a call should have been recorded or transcribed and filed of record.

In closing argument, Gilmore's counsel advised the court that the reason multiple suppression motions has been filed was that until the video was obtained, he thought someone went and got the warrant by leaving scene but because video showed they stayed at the location he then realized it had to be obtained another way. (Supp. TR., Vol. 1, p. 108).

The trial court denied Gilmore's motion to suppress finding the United States had met their burden. (Supp. TR., Vol. 1, p. 114-115) Once the court had ruled, Mr. Gilmore expressed a number of complaints to the court, including the fact that the warrant had not been filed of record with the court clerks, assigned a docket

18

number, and asserting violations of the Supreme Court rules. (Supp. TR. Vol. 1 p. 118-120) The court issued a formal ruling denying Gilmore's motion to suppress incorporating the ruling from the bench and did not address Gilmore's complaints. (R. Doc. 80)

The matter proceeded to trial and the jury found Gilmore guilty and the court ordered a PSR to be prepared. At this juncture, Gilmore and his counsel had a breakdown in the attorney/client relationship and Gilmore's counsel was relieved and substitute counsel appointed pursuant to the Criminal Justice Act. (R. Doc. 105) The order appointing substitute counsel directed substitute counsel to review the case and file a report after reviewing any open issues. (R. Doc. 105) Substituted trial counsel filed a report and attached additional information related to the suppression matters previously heard. (R. Doc. 106 with Defendant's Exh. 1 attached) Gilmore wanted to reopen the suppression matter and claimed he had additional information which had been obtained subsequent to the previous suppression hearing including correspondence from the both court clerks that they had no records on file related to any search warrant in the matter. (R. Doc. 106, Defendant's Exh. 1 at p. 95, 99, 102, 103) His request for further review was

19

denied by the court (R. Doc 108)   Thereafter, the sentencing date was set, the sentencing hearing held and a 15 year sentence imposed. (R. Doc. 114, 115)

Gilmore filed a timely notice of appeal and asserts the court should have granted his motion to suppress. (R. Doc. 117)

Appellant challenges the validity of the warrant or whether a warrant was ever actually issued and returned by a magistrate on the day of the search given a number of cited irregularities in the process which include: the fact that the officer who supposedly had the warrant issued failed to have his body mic/video camera/recorder activated during the time he was supposedly on the phone with the judge, obtaining the warrant telephonically; the deletion or non-production of emails sent and received related to the issuance of the warrant; the United States' inability to provide an email showing an executed warrant was returned to the requesting officer by email; the lack of any email evidence from the judge's computer showing the warrant was transmitted back to the officer after it was executed by the issuing magistrate; no proof of any cell phone call was ever made from the officer to the court (and recorded and transcribed as required), and, there being no copy of the affidavit, warrant, or verified warrant return being filed with

the court clerks as required by the Arkansas Rules of Criminal Procedure, the Arkansas Code and Administrative Orders of the Supreme Court of Arkansas.

Further there is no evidence that upon the warrant being returned to the issuing magistrate, that it was filed with or transmitted to a judge with jurisdiction over felonies as required by state rules of criminal procedure or transmitted to or filed with the Circuit Court Clerk for the county in which it was issued or with the Municipal Court Clerk even though such is required by applicable rules of criminal procedure and the Arkansas Supreme Court Administrative order and the Arkansas Code. No evidence was ever produced to indicate that the court recorded or memorialized the testimony taken over the phone during the request for the issuance of the warrant, or file marked any documents related to the issuance or return of the warrant as required by the rules, orders and statutes.

The 4th Amendment requires that before a warrant is issued, probable cause on oath or affirmation must be received, thus the statutes require the court to administer an oath and record or transcribe the oath and testimony over the phone. If the warrant is sought on the basis of a verified affidavit only, the rules require the documents be maintained and filed with the clerk of the court for the judge. In this case, the testimony of the Officer Bailey indicates that both an affidavit was

21

submitted and testimony was given over the phone, none of which was recorded, transcribed, or filed with the clerk.  Ark. R. Crim. Proc. 13.1 and 13.4, Ark. Sup. Ct. Adm. Order 2, 18 &19, Ark. Code. Ann. § 16-82-201.

Given that the lead officer claimed he obtained the warrant telephonically by cell phone and by email using a city owned computer, cell phone, and email account any information contained in the city's records was relevant, under their control and should have been maintained and introduced by them after being filed with the court. No real explanation was given for why any of the documents would have been deleted, other than to make room in the recipients inbox.

Without any independent proof that the warrant was actually issued, the court credited the officer's explanation as credible and found the affidavit supported a finding of probable cause for the issuance of the warrant.

Gilmore asserts the flagarant disregard and non-compliance with the rules in this case either support his claim that an actual warrant was never issued as claimed, or that the warrant was not obtained in compliance with the mandated procedures, and that his motion to suppress should have been granted.

22

## SUMMARY OF ARGUMENT

The Appellant's motion for suppression should have been granted and the evidence seized as the result of the search suppressed as the isolated smell of marijuana did not establish probable cause for a search.

The appellant's motion to suppress should have been granted upon the failure of proof as to the application and issuance of the warrant as require by state statute, the rules of criminal procedure and the Arkansas Supreme Court Administrative Orders.

## ARGUMENT

## I.

**THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AS THE ISOLATED SMELL OF MARIJUANA IS NOT SUFFICIENT PROBABLE CAUSE FOR THE ISSUANCE OF A WARRANT.**

United States Constitution, Amendment IV
*United States v. Toney*, 4:20-cr-00271-02 KGB (E.D. Ark. Jul. 8, 2022)
*United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017)

23

**Standard of Review**:

"Reviewing the denial of a motion to suppress, this court reviews 'legal conclusions *de novo* and factual findings for clear error.'" *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (*quoting United States v. Woods*, 747 F.3d 552, 555 (8th Cir. 2014)).

"Reversal of a decision to deny a motion to suppress is warranted only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks omitted).

The appellate court reviews the district court's factual findings for clear error and legal determinations *de novo*. *United States v. Clay*, 646F.3d 1124, 1127 (8th Cir. 2011), *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) (citation omitted), *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015). *United States v. Smith*, 820 F.3d 356, 359–60 (8th Cir. 2016)

24

The court "[M]ay affirm the district court's denial of a motion to suppress on any ground supported by the record." *United States v. LaGrange*, 981 F.3d 1119, 1121 (8th Cir. 2020).

## Applicable Law

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Gater*, 868 F.3d 657,660 (8th Cir. 2017). The review of a finding of probable cause with deference to the warrant-issuing judge, requires only that there was "a substantial basis for concluding that probable cause existed." *United States v. Johnson*, 848 F.3d 872, 876(8th Cir. 2017) The Court will affirm the trial court's ruling unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *United States v. Douglas*, 744 F.3d 1065, 1068 (8th Cir. 2014)

A warrant is supported by probable cause if the totality of the circumstances demonstrates "a fair probability that contraband or evidence of a crime will be

found in the place to be searched." *United States v. Seidel*, 677 F.3d 334, 337 (8th Cir. -3- 2012) (quotation omitted); *see Illinois v. Gates*, 462 U.S. 213, 230 (1983).

The appellate court's task is to "determine whether the warrant's issuing court had a substantial basis for finding probable cause." *United States v. Green*, 954 F.3d 1119, 1123 (8th Cir. 2020). "When the issuing judge relies solely upon a supporting affidavit to issue the search warrant," "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334 at 338 (8th Cir. 2012)

Whether a warrant is supported by probable cause is a legal determination and is based on whether the warrant is supported by facts that would "justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Riedesel*, 987 F.2d 1383, 1390 (8th Cir. 1993).

Appellate Case: 23-3002     Page: 32     Date Filed: 10/10/2023 Entry ID: 5324435

Examining the sufficiency of the supporting affidavit is to be based upon a "common sense" and not a "hypertechnical' approach." *United States v. Grant*, 490 F.3d 627, 631-32 (8th Cir. 2007).

 "The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011), *citing Mapp v. Ohio*, 367 U.S. 643 (1961). The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984).

"This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) (internal quotation marks omitted).

The Fourth Amendment of the United States Constitution provides:

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, **supported by Oath or affirmation**, and particularly describing the place to be searched, and the persons or things to be seized.

Appellate Case: 23-3002     Page: 33     Date Filed: 10/10/2023 Entry ID: 5324435

(emphasis added)

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" *See United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (noting that the Fourth Amendment applies to the states through the Fourteenth Amendment).

The default rule for entering a home to search and retrieve evidence is to get a warrant first. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). A warrantless search is presumptively unreasonable with the burden on the government to attempt to demonstrate an exception to the warrant requirement. The facts of the case do not support any legitimate argument for approving the search of the premises as a warrant exception case.

"Probable cause to issue a search warrant exists if, in light of the totality of the circumstances, there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 686 (8th Cir. 2019) (*quoting United States v. Shockley*, 816 F.3d 1058, 1061 (8th Cir. 2016)).

Appellate Case: 23-3002    Page: 34    Date Filed: 10/10/2023 Entry ID: 5324435

Probable cause "exists when[ever] . . . a reasonable person could believe [that] there is a fair probability that . . . evidence of a  crime w[ill] be found" in the place to be searched. *Kleinholz v. United States*, 339 F.3d 674, 676 (8th Cir. 2003) (per curiam) (quotation marks omitted).

"The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves*, 890 F.2d 87, 90 (8th Cir.1989) (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)).

In numerous cases, the Eighth Circuit has held that the smell of marijuana coming from a vehicle supports probable cause to search for drugs. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"); *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000);  *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000). The Eighth Circuit has also permitted the search of residences based on law enforcement's reported smell of marijuana, among **other** factors, to establish probable cause. *See United States v. McIntyre*, 646 F.3d 1107, 1115 (8th

29

Cir. 2011) (describing the "strong odor of marijuana outside the garage" of the residence as a factor in establishing probable cause).

In *United States v. Toney*, the federal court recognized the isolated smell of marijuana may not be a sufficient basis for probable cause stating: "Moreover, this case does not present a circumstance where law enforcement reports in isolation the smell of marijuana coming from a residence in Arkansas as a basis to seek a search warrant for the residence. *United States v. Toney*, 4:20-cr-00271-02 KGB (E.D. Ark. Jul. 8, 2022). This case presents just such an issue.

The government is expected to cite controlling Eighth Circuit Court of Appeals cases that recognize the "plain smell" doctrine as providing a basis for probable cause to search a residence during an attempted knock-and-talk. *See United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021); *United States v. White*, 928 F.3d 734 (8th Cir. 2019).

However, given the recent change in 16 states legalizing medical or recreational marijuana, the "plain smell" doctrine as it relates to the isolated smell of marijuana, should be reconsidered. The court should consider whether the smell of marijuana in isolation should be grounds for the issuance of a search warrant of a home given that medical marijuana use is now legal in the state without additional

Appellate Case: 23-3002    Page: 36    Date Filed: 10/10/2023 Entry ID: 5324435

facts.  The Arkansas Supreme Court has noted that the smell of something legal, is not grounds for a search.  *Bennett v. State*, 345 Ark. 48, 53, 44 S.W.3d 310, 313 (2001) (the State has not furnished us with any precedent which has sanctioned the issuance of a search warrant based solely on a trained officer's smell of a legal substance).

Gilmore asserts the isolated smell of marijuana did not establish probable cause to search the residence.  Medical marijuana is legal in Arkansas.  Thus the smell of marijuana, in isolation does not suggest a violation of law as such smell may merely be evidence of innocent legal conduct.  The only other claim by officers for conducting a knock and talk in this matter was that they had received "information" of suspected drug trafficking from the residence but even they made no attempt to claim it was from a reliable source or of such veracity to support a finding of probable cause. *See Ark. Rule Crim. Proc. 13.1* (If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained)

Thus the singular asserted reason for the issuance of the warrant was the claimed isolated smell of marijuana at the scene.  Gilmore argues the court should

31

find that the isolated smell of marijuana is insufficient probable cause to search a residence under the circumstances of this particular case, as noted by the court in *Toney, supra.*

The government is expected to argue that marijuana remains contraband under federal law. While that is true, the issue of whether the simple isolated smell of marijuana alone provides probable cause to believe a crime has been committed or contraband may be found, requires an examination of whether the smell may be nothing more than the existence or proof of merely lawful activity. *See People v. McKnight*, 446 P.3d 397 (Colo. 2019) To grant a warrant based upon nothing more than the possibility of legal use intrudes upon a person's right of privacy related to that legal conduct. One alternative conclusion that the smell of marijuana may be legal pitted against another conclusion that the smell is from illegal possession, requires a reconsideration of the plain smell doctrine, when no other evidence is present because most past cases analyzing "plain smell" occurred against a backdrop of marijuana being illegal under all circumstances. *Id.* That marijuana may remain illegal across the board under federal law is not the end of the inquiry for search and seizure analysis. *Id.*

## II.

## THE COURT ERRED IN DENYING GILMORE'S MOTION TO SUPPRESS ABSENT PROOF OF OATH OR AFFIRMATION AS REQUIRED BY STATE LAW, RULES OF PROCEDURE, AND SUPREME COURT ADMINISTRATIVE RULES.

Ark. Sup. Ct. Administrative Order 2

Ark. R. Crim. Proc. 13.1

Ark. Code Add. § 16-82-201 (2020)

For his second argument Gilmore asserts the United States did not establish that a warrant was properly obtained "on oath or affirmation" in the matter given the lack of proof of a properly issued and recorded affidavit, warrant, return, inventory and filing.

On October 3, 2019, the Court entered a standard discovery order. (R. Doc 11) At some point, the United States provided a copy of the incident report and case file materials to Gilmore's counsel. (R. Doc. 27, Defense Exh. 1(A)) On August 13, 2020 Gilmore's first motion to suppress was filed (R. Doc. 26) Defendant challenged both the warrantless search and detention (prior to the issuance of any warrant) as well as the search warrant issued on the basis of illegal

33

conduct mentioned and the lack of probable cause in the "four corners" of the affidavit. The incident report, affidavit, search warrant and return were attached to the motion. (R. Doc. 26, 27, 27-1,2,3)

In response the United States filed a reply (R. Doc 30) attaching an affidavit for a search warrant (R. Doc 30-1) and the purported search warrant (R. Doc 30-2), as exhibits to their response to the motion to suppress. (R. Doc 30). The response of the United States asserts "Investigator Christopher Jefferson prepared the search warrant affidavit, and a search warrant was signed by Judge David Boling." (R. Doc. 30 at p. 2)  The warrant indicates it was authorized by the Judge Boling at 120 O'clock p.m. on September 20, 2018. (R. Doc. 30-2, Government's Exh. B at p. 1)

Neither the affidavit or warrant are file marked or certified as true and correct by either the Municpal Court Clerk (Judge Boling's Court clerk) or the Craighead County Circuit Clerk (the Clerk of the court with felony jurisdiction). No mention was made that the warrant was obtained electronically or by the taking of testimony over the phone in either the incident reports, affidavit, or warrant.

The United States asserted that once the search warrant was signed, investigators searched the residence." (R. Doc 30 pp 2)  No other information was provided or statements made regarding how the warrant was obtained.  It is apparent at this

34

juncture, that everyone believed officers had appeared in front of a magistrate to obtain a warrant. (*see* comment of counsel, T. Supp. Hrg. 108)

Gilmore then filed a second suppression motion (R. Doc 36) on January 29, 2021. Gilmore filed a third motion to suppress after obtaining body camera video from the scene on the day in question pursuant to a freedom of information request to the Jonesboro police department which showed officers entering his home at 12:02 p.m. The video had not been provided to Gilmore in discovery. The timing of the entry was questioned given previous claims that the request for the warrant had been made at approximately 12:00 p.m. but the warrant reflects it was issued at 1:20.

The video demonstrates that officers never left the scene to obtain a warrant nor did they have time to leave, obtain one and come back in the short time frame between the asserted application and execution time. Given their previous assertion that they did not have a warrant at the time they arrived at the residence but shortly thereafter entered the residence with a warrant, the question arose as to how that was accomplished in such a short period of time. Only after questions were raised about how officers applied for and obtained a search warrant from the judge (assumptively by meeting with the judge) and were able to return to the residence

Appellate Case: 23-3002     Page: 41     Date Filed: 10/10/2023 Entry ID: 5324435

to execute same, in the span of 2 minutes, for the first time it was disclosed that the warrant had been applied for telephonically/electronically and documents transmitted via email to and from officer Bailey's car parked at the scene, and the was warrant issued and returned to officers electronically after the judge took testimony from the office by cell phone.  (R. Doc. 64) This of course contradicts the previous filing stating it was Officer Jefferson who had applied for the warrant.

This new revelation prompted defense counsel to request the United State provide proof related to any such electronic request for the issuance of the warrant and proof related to the return of the warrant electronically to Officer Bailey and a print log from the printer showing the warrant had been printed. (R. Doc. 64-1) The government responded they were not in possession of any such documents. (R. Doc 64-1)

Gilmore's counsel further attempted to obtain cell phone records and records from documents custodians and to identify who, if anyone, had records related to the purported issuance of the warrant, none of which would be necessary if the warrant materials had been filed with the court clerk as required by law. Gilmore asserts that the United States failed to produce substantial evidence that a valid

Appellate Case: 23-3002    Page: 42    Date Filed: 10/10/2023 Entry ID: 5324435

warrant was actually issued on the day in question and as a result his motion to suppress should have been granted.

The officers involved in this case were certified law enforcement officers working for the Jonesboro Police Department street crimes unit. As such, the Arkansas Rules of Criminal Procedure are applicable to their conduct.

Ark. R. Crim. P. 13.1 provides:

(a) A search warrant may be issued only by a judicial officer.

(b) The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more **affidavits** or **recorded testimony under oath before a judicial officer** particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

(c) An application for a search warrant and the affidavit in support of the search warrant **may be** transmitted to the issuing judicial officer by facsimile or by other **electronic means**. **Recorded testimony** in support of a search warrant **may be** received **by telephone** or other electronic means **provided** the issuing judicial officer first **administers an oath** by telephone

Appellate Case: 23-3002     Page: 43     Date Filed: 10/10/2023 Entry ID: 5324435

or other electronic means to the person testifying in support of the issuance of the warrant. After signing a search warrant, the judicial officer issuing the warrant may transmit a copy of the warrant by **facsimile or other electronic means** to the applicant for the warrant. **The original signed search warrant shall be retained by the judicial officer issuing the warrant and shall be filed with the record of the proceeding as provided in Rule 13.4(c).**

(**d**) Before acting on the application, the judicial officer may examine on oath the affiants or witnesses, and the applicant and any witnesses he may produce, and may himself call such witnesses as he deems necessary to a decision. **He shall make and keep a fair written summary of the proceedings and the testimony taken before him, except that if sworn testimony alone is offered in support of the application, such testimony shall be recorded pursuant to subsection (b) hereof.**

(**e**) If the judicial officer finds that the application meets the requirements of this rule and that, on the basis of the proceedings before him, there is reasonable cause to believe that the search will discover persons or things specified in the application and subject to seizure, he shall issue a search warrant based on his finding and in accordance with the requirements of this rule. If he does not so find, the judicial officer shall deny the application.

(**f**) The proceedings upon application for a search warrant shall be conducted with such secrecy as the issuing judicial officer deems appropriate to the circumstances.

(emphasis added)

Arkansas Rule of Criminal Procedure13.4 - Return of a Search Warrant

provides:

(a) (not applicable to the facts of this case)

(**b**) An officer who has executed a search warrant or, if such officer is unavailable, another officer acting in his behalf, shall, as soon as possible and not later than the date specified in the warrant, **return the warrant to**

38

**the issuing judicial officer together with a verified report of the facts and circumstances of execution, including an inventory of things seized**. If the issuing judicial officer is unavailable, the warrant may be returned to any judicial officer of a circuit or district court within the county in which the warrant was issued.

**(c)** The judicial officer to whom an executed warrant is returned **shall cause the warrant, report, inventory of things seized, and affidavit or sworn testimony on application to be filed with the clerk, and they shall be publically accessible** unless the court for good cause base upon reasonably specific facts orders that any of them should be closed or sealed.

**(d)** If the judicial officer to whom an executed warrant is returned **does not have jurisdiction to try the offense** in respect to which the warrant was issued or the offense apparently disclosed by the things seized, he or she may transmit copies of the affidavit or sworn testimony on application, warrant, inventory, return, report, and related papers to an appropriate court having jurisdiction to try the offense disclosed, **but the issuing judicial officer's clerk shall keep a copy in the clerk's file**.

**(e) Affidavits or sworn testimony on application, warrants, inventories, returns, reports, and related papers shall be filed with the clerk of the issuing judicial officer in the warrant docket as described in Administrative Order Number 2 or 18**.

**(f) Administrative Order Number 19** governs public access to affidavits or sworn testimony on application, warrants, inventories, returns, reports, and related papers subject to the provisions of this rule (see section (VII)(A)(3); see section (VIII) for obtaining access to documents excluded from public access). Remote electronic access to the warrant docket by the general public, however, shall be governed by and subject to the policies or requirement of the court.

(emphasis added)

Appellate Case: 23-3002     Page: 45     Date Filed: 10/10/2023 Entry ID: 5324435

Arkansas Code § 16-82-201. Issuance of search warrants upon oral testimony, provides:

(a) General Rule. If the circumstances make it reasonable to dispense with a written affidavit, any judicial officer of this state may issue a warrant based upon sworn oral testimony **communicated by telephone** or other appropriate means.

(b) Application.

(1) The person who is requesting the warrant **shall prepare a document**, in a form approved by the Arkansas Judicial Council, to be known as a duplicate original warrant and **shall read such duplicate original warrant verbatim to the judicial officer**.

(2) **The judicial officer shall enter verbatim what is so read to such magistrate on a document to be known as an original warrant.**

(3) The judicial officer may direct that the warrant be modified.

(c) Issuance.

(1) If the judicial officer is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the judicial officer shall order the issuance of a warrant **by directing the person requesting the warrant to sign the judicial officer's name on the duplicate original warrant.**

(2) **The judicial officer shall immediately sign the original warrant and enter on the face of the original warrant the exact time when the warrant was ordered to be issued.**

(3) The finding of probable cause for a warrant upon oral testimony may be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

(d) **Recording and Certification of Testimony.**

(1) When a caller informs the judicial officer that the purpose of the call is to request a warrant, the judicial officer **shall immediately place under oath** each person whose testimony forms a basis for the application and each person applying for that warrant.

40

(2)  (A) **If a voice recording device is available, the judicial officer shall record by means of the device all of the call after the caller informs the judicial officer that the purpose of the call is to request a warrant.**

(B) **Otherwise, a stenographic or longhand verbatim record shall be made immediately.**

(C) **If a voice recording device is used or a stenographic record made, the judicial officer shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court.**

(D) **If a longhand verbatim record is made, the judicial officer shall file a signed copy with the court.**

(e) Contents. The contents of a warrant upon oral testimony shall be the same as the contents of a warrant upon affidavit.

(f) Additional Rule of Execution. The person who executes the warrant **shall enter the exact time of execution** on the face of the duplicate original warrant.

(g) Motion to Suppress Precluded. Absent a finding of bad faith, evidence obtained pursuant to a warrant issued under this section is not subject to a motion to suppress on the ground that the circumstances were not such as to make it reasonable to dispense with a written affidavit.

(emphasis added)

Officer Bailey specifically indicated the "oath and affirmation" for this

particular warrant was accomplished over the phone.  Not only was no recording or

transcription of the call ever produced, or the lack of such recording explained, but

the "duplicate warrant" procedure was apparently disregarded as well because the

Officer Bailey said he is the one that filled out the "time" the warrant was issued

(prior to sending it to the court) and the duplicate copy should have had the time

filled out by the judge, which then is supposed to be filed with the clerk.

41

Although officers appeared at the suppression hearing and testified about how the warrant in this case was purportedly issued, at every turn, the very system set up to record, verify, document, return and maintain proof related to the warrant fails to establish that any such warrant was actually issued and returned to them in accordance with the rules. And the court who issued the warrant has apparently never filed the affidavit, warrant, inventory, verified return, recording or verbatim record with the clerk. Two separate felony cases were filed in the Craighead County Circuit Court resulting from the search (and subsequently dismissed) and neither one contains the required filings, or an indication that they were filed under seal, a point raised by Gilmore both at the suppression hearing and as indicated by the letter from both court clerks attached to the status report filed with the trial court. (R. Doc. 106-1, Defendant's Exh. 1 to status report).

Although the officers were equipped with body cameras on the day of the search, Officer Bailey did not record any video, and Officer Jefferson "mistakenly" didn't activate his body camera till the search was under way. (TR. Vol. 2 at p. 89)

The judge, who is supposed to either record or transcribe the hearing verbatim, did not. Emails which would have supported the officers' testimonial claims were deleted or non-existent both from the officers email, but also from the

Judge's email. The officer claims he deleted his because his mailbox was full and there was no explanation for the absence on the judicial officer's end who is required to keep and file the documents with the court clerk. No cell phone records were ever introduced to prove any call related to the issuance of the warrant was made by the officer to the court, the call length, or to which number it was directed. The court made no recording, transcript, or verbatim record of the matter, or if he did, it was not filed of record, as required, and no explanation for the failure to file same was even given.

No evidence was introduced showing the warrant was returned with a verified account of the search and inventory and filed with the clerk of the issuing judge's clerk as required by the rules. No transcript of the call was made or verified by the court. The complete lack of compliance violated the Rules of Criminal Procedure, the Administrative Orders of the Supreme Court and the Arkansas Code all of which are designed to protect a Defendant and ensure public access, review and oversight of the process to ensure Constitutional Rights are not violated and to provide proof that a warrant was in fact issued on a specific date and time all of which is relevant to suppression issues as all of these requirements

Appellate Case: 23-3002     Page: 49     Date Filed: 10/10/2023 Entry ID: 5324435

are predicates and proof that a warrant was based upon "oath or affirmation" of probable cause as required by the Fourth Amendment.

When a "phone" warrant is issued, the officer is actually supposed to send one copy to the judge who fills it out on his end (which should then be maintained by the judge) and the officer is supposed to sign the judge's name to the duplicate copy. *supra*  That was not done here.

Gilmore alleges the officers complete disregard for the warrant application protocols so undermine their credibility that the court should not have found a warrant was properly issued or at least required additional supporting proof before proceeding to rule on whether the claimed warrant was supported by probable cause.  Taken in tandem with their withholding of the body camera footage, their late disclosure or claim that the warrant was obtained telephonically, and the absolute disregard for virtually every requirement related to the Arkansas Code, the Arkansas Rules of Criminal Procedure and the Administrative Orders of the Supreme Court, his motion should have been granted.

44

## <u>CONCLUSION</u>

Gilmore asserts his motion to suppress should have been granted and the

evidence obtained should be suppressed.

/s/ Mark Alan Jesse
Sup. Ct. No.: 92107

The Jesse Law Firm, PLC
425 West Broadway, Ste E
North Little Rock, AR 72114
Phone (501) 375-4422
Fax (501) 375-9915
Email: Jesselawfirm@aol.com

45

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

The undersigned hereby certifies that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) in that the number of words contained in this brief is 11, 222 , excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. *32(a)(5)* and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman size 14 font.  Pursuant to 8th Cir. R. 28A(ii), I further certify that the brief and any accompanying addendum have been scanned for viruses and is virus-free.

Dated this 9th day of October, 2023.

/s/ Mark Alan Jesse
Sup. Ct. No.: 92107

The Jesse Law Firm, PLC
425 West Broadway, Ste E
North Little Rock, AR 72114
Phone (501) 375-4422
Fax (501) 375-9915

Email: Jesselawfirm@aol.com

Appellate Case: 23-3002     Page: 52     Date Filed: 10/10/2023 Entry ID: 5324435

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that an electronic copy of this brief has been submitted for review and approval on October 9, 2023 to the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: October 9, 2023.

/s/ Mark Alan Jesse

Appellate Case: 23-3002    Page: 53    Date Filed: 10/10/2023 Entry ID: 5324435